# West Branch Lumbermen's Exchange *v.* Fisher et al., Appellants.

*Salvage on logs stranded on islands in Susquehanna river.*

The salvage for logs stranded on islands in the Susquehanna river, below the Susquehanna booms, is reasonable compensation under the Act of 1812, P. L. 335, 1853, P. L. 648, 1885, P. L. 529, and not fifty cents per log, under the Act of 1866, P. L. 1867, ap. 1366, the latter Act applying to floating but not stranded logs.

Argued May 23, 1892. Appeal No. 5, July T., 1892, by plaintiffs, from decree of C. P. Northumberland Co., in equity, No. 170, against defendants, George P. Fisher et al. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.

Bill in equity to restrain defendants from retaking logs stranded in the Susquehanna river on islands owned by defendants.

The master, Geo. W. Ryon, found that plaintiff's saw logs

were swept out of the Susquehanna boom by a flood and carried down the West Branch into the main stream and stranded on islands belonging to defendants near the town of Northumberland and above Columbia bridge. Defendants claimed fifty cents a log and costs as salvage. After bill was filed plaintiffs paid fifty cents per thousand feet and costs. The master found (1) that defendants had received all the salvage due them, but (2) recommended a decree dismissing the bill because it did not allege tender of salvage.

Exceptions were filed (1) by defendants and (2) by plaintiffs to the above conclusions of the master.

The opinion of the court was as follows, by SITTSER, P. J., of the 44th judicial district specially presiding :

" The Act of March 20, 1812, provides : ' If any logs which may have been or may be put into the river Susquehanna or either of its branches, or into the river Lehigh, or the waters running into said river, and which may be taken up by any person or persons floating down the waters of either of said rivers, it shall be the duty of the person so taking up such lumber, to lodge a list,' etc.

"Before the Act applies, it must appear : 1st. That the logs were put into the river. 2d. That they were taken up while floating. Then upon compliance with the statute as to notice, etc., the captor is entitled to six cents per log. This Act manifestly did not apply to stranded logs : Etter v. Edwards, 4 Watts, 63. And on April 20, 1853, an Act was approved extending the provisions of the Act of 1812 to owners of islands in the Susquehanna river upon which logs might lodge.

" The Act of May 8, 1855, provides that any person who shall take up logs found floating in the river Susquehanna or either of its branches, shall, in lieu of the compensation now allowed by law, be entitled to reasonable compensation ; and, as the Act would not otherwise apply to stranded logs, the 5th section was inserted expressly enacting that it shall apply to logs which may lodge upon any islands in the Susquehanna river. This Act is *pari materia* with the Acts of 1812 and 1853, and the logs must be put into the river and taken up while floating or lodged upon an island.

[ " Thus stood the law when the Act of April 10, 1862, P.

L. 383, was approved. This Act authorizes the owners of any logs, put or intended to be put into the West Branch of the Susquehanna to be run, driven or floated to the Susquehanna booms at Williamsport, to mark the same and furnish a copy of the mark to the prothonotary of the common pleas of Lycoming Co., etc. As to these logs, so marked, and while above the Susquehanna booms, the Acts of 1812, 1853 and 1855 are repealed. When once past the booms, the common law seems to have been no longer adequate, and the statute proceeds to say: ' And for the purpose of encouraging persons to catch, take up and secure logs floating down the Susquehanna river, below the Susquehanna booms, it is made lawful to take up and secure logs so found floating down the said river' with the right to charge fifty cents per thousand feet, board measure, for so doing, and seventy-five cents per thousand for logs taken up below Columbia bridge. This increase of compensation is only given for taking up and securing logs found floating down the river. No provision is made for stranded logs. The Act of 1853 was necessary to extend the provision of the Act of 1812 to logs lodged upon islands. The 5th section of the Act of 1855 was necessary to make that Act include logs lodged upon islands. The Act of 1862 has no such provision and does not apply to stranded logs. The Act is penal in its character and should be strictly construed. Logs taken up while found floating cannot be construed to mean logs lodged upon islands, especially when before this, in other Acts upon the same subject, the legislature has particularly mentioned such logs when it was intended to embrace them within the provisions of any of the acts. The fact that these Acts are *pari materia*, makes the want of a provision in reference to stranded logs the more conspicuous for its absence. The case of Etter v. Edwards, 4 Watts, 63, cited above seems to leave no doubt on the subject.] [1]

[" The situation of logs lodged upon islands must be determined by the Act of 1855. The compensation to the salvor is there fixed at what is called reasonable compensation.] [2]

[" Next comes the Act of Dec. 11, 1866, which declares the true intent and meaning of § 1 of the Act of 1812 to be that any saw logs may be taken up whether the same be put into the river intentionally or otherwise, and provides that no saw

logs may be floated or driven therein, unless rafted and under the control of men 'and the persons taking up any of said saw logs so floating, shall be entitled to receive from the owners thereof fifty cents for each log before delivering up the same.' The second section authorizes the taking up of the 'said saw logs or any of them if they be found floating loose in said stream.' It further provides that the logs shall become the absolute property of the captor, unless the owner shall, within two months, pay him fifty cents per log.

[" There is nothing in either of the two sections of this Act which has any reference to the salvage for logs lodged upon an island. Both sections in express terms refer to floating logs which do not include stranded logs.] [3]

[" The first section of the Act of 1866 changes the Act of 1812 so that it is no longer necessary that the logs should be intentionally put into the river in order to be within its provisions. All such logs, therefore, come within the supplement of 1853, extending the provision of the Act of 1812 to logs lodged upon islands, and also within the Act of 1855, giving reasonable compensation to the persons taking up logs either floating or lodged upon an island.] [4]

" In view of this, can there be any doubt as to what was in the mind of Justice Agnew in delivering the opinion of the court in Craig v. Kline, 65 Pa. 399–407, when he says : ' The defendants had a right to take up logs lying on the islands under the Acts of 1812, 1853 and 1855 as explained by the first section of the Act of 1866.' Why does he omit from his list of the Acts bearing upon the subject, the Act of 1862 and the 2d section of the Act of 1866 ? Simply because they do not refer to stranded logs. The reference to floating logs in the first section of the Act of 1866, has no·more reference to the subject than the mention of floating logs in the second section. He is evidently speaking of that part of the first section which construes the Act of 1812 and declares the true intent and meaning thereof to be that any saw logs may be taken up under its provisions, ' whether the same be put into the stream intentionally or otherwise.'

" But for the construing Act of 1866, it might be argued with much force, that logs, swept from the booms at Williamsport, by an unusual flood, were not put into the river within

the meaning of the Act of 1812 and its supplements, and that their recaption by their owners should be governed entirely by the common law.

["Since the Act of 1866 gives the right to salvage for such logs we must look to the Acts of 1812, 1853 and 1855 to find the compensation for logs lodged upon islands, for they are the only acts which make provision on the subject. The various acts of assembly referred to in this opinion deal: 1st, with the way the logs get into the river; 2d, with salvage for floating logs; 3d, with salvage for logs lodged upon islands. And these various provisions must be kept distinct and not mixed if we wish to arrive at a correct understanding of their provisions.] [5]

"The case of Craig v. Kline, 65 Pa. 399–407, cited to us, was an action of replevin, brought by the owners of logs against their captors. Some were taken while floating and others taken that were stranded upon islands, in the spring of 1868. There were two cases, No. 18 and No. 68. The plaintiffs obtained a verdict in both cases, but took a writ of error in No. 18 because they believed they were not permitted to recover enough, and the defendants took a writ of error in No. 68, as well as in No. 18. The first case, No. 18, involved logs floating and logs stranded. The second case, No. 68, involved only logs stranded. The defendants claimed, under the Act of 1866, as an independent statute dispensing with the lodging of a list with a justice and with notice. The court below seems to have taken their view of it and would not permit the plaintiffs to recover for logs taken while floating, but held that the Act of 1866 did not embrace logs lodged upon islands, and permitted a recovery in both cases for the value of such logs. The Supreme Court held that the Acts of 1812, 1853, 1855, 1862 and 1866 were *pari materia*, that the provision for notice in the Act of 1812 was not repealed, and as no notice was given, as required by that Act, the plaintiffs were entitled to recover for the logs floating as well as the logs stranded upon islands.

"The constitutionality of the Act of 1866 is discussed. They say: 'If it means that a forfeiture can take place without notice, as the court below held, and without an opportunity of being heard on the question whether the owner had voluntarily set his logs afloat loose upon the stream, then it

seems to us to be contrary to the bill of rights that no one shall be deprived of his property unless by the judgment of his peers or the law of the land.'    The legislature may forfeit property for the voluntary act of the owner but not for the work of a trespasser or the act of God; and the attempt was being made in the court below to forfeit the logs without notice or any opportunity to be heard on that question.    The legislature may however authorize the taking up of logs, whether put into the river intentionally or otherwise, and fix the compensation of the salvor, provided due notice be given so the owner may pay the salvage and take his logs, before the title is forfeited for non-payment.

"We think the legislature has the power to fix the amount of salvage which shall be upon logs which get into the river without the fault of the owner.    They may fix it at six cents per log as under the Act of 1812 and its supplement of 1853, or at reasonable compensation as under the Act of 1855, or at fifty cents per thousand feet, board measure, as under the Act of 1862, or at fifty cents per log as under the Act of 1866. The question is, what has the legislature provided?  [We have already shown, we think, that as to logs lodged upon islands, the reasonable compensation given by the Act of 1855 is all the salvor can claim, and that this claim cannot be defeated by showing that the logs were not put into the river by the voluntary act of the owner, because the Act of 1866 so construes the Act of 1812 as to make it apply to logs put into the river intentionally or otherwise.]  [6]

["The defendants had the right to take up the logs stranded upon the islands under the Acts of 1812, 1853 and 1855, as construed by the first section of the Act of 1866 but the Act of 1855 fixes the salvage.]  [7]

["The defendants having, in our opinion, received from the plaintiff all they can justly claim, we dismiss their exceptions.]  [8]

"The plaintiff's exception that the master erred in recommending the dismissal of the bill is sustained.  [We do not dismiss the plaintiff's bill, and we make the injunction heretofore granted in this case perpetual.]"  [11]

*Errors assigned, inter alia,* were (1–9) portions of opinion in brackets, quoting it, and (12) failure to dismiss bill.

*Chas. Hower*, for appellant; *H. C. McCormick* and *S. C. Mc-Cormick*, for appellees, not heard, cited West Branch Lumbermen's Exchange v. McCormick [1 Dist. R. 542].

PER CURIAM, July 13th, 1892.

The decree in this case is affirmed upon the opinion of the learned judge of the court below, and the appeal dismissed at the costs of the appellants.