# The West Branch Lumberman's Exchange, Appellant, *v.* D. Austin Lutz and Elmer E. Zaring.

*Statutes—Construction—Repeal—Floating logs.*

The act of April 10, 1862, P. L. 383, for the more effectual protection of the owners of floating logs on the Susquehanna river, is not repealed by the act of December 11, 1866, P. L. (1867), 1365, which has reference to logs wittingly or carelessly set afloat and not to those carried away by a flood for which contingency the act of 1862 was intended to provide.

*Statutes – Rules of construction—Different acts as forming one statute.*

It is an elementary rule that all parts of a statute are to be considered in its construction even when the words are the plainest ; for the true meaning of any passage is that which best harmonizes with the subject, and with any other passage in the statute ; hence, it follows that the examination must extend to other acts on the same subject together with legislative intent ; for all are, for the purpose of construction, considered as forming one homogeneous and consistent body of law.

*Floating or drift logs—Body of statute law.*

The acts of 1812, 1853, 1854, 1862 and 1866 form a system, and the act of 1866 in the use of the words " floating intentionally or otherwise," unless rafted and under pilotage and control of men, refers to a voluntary act or such reckless conduct as would be equivalent thereto ; it does not in direct terms or by fair implication have reference to flood logs which were at the time of capture outside of the restraint of human agency or domination.

*Replevin—Captured flood logs—Terms of redemption.*

Certain logs carried away by a flood having been captured, advertised and identified, the owners tendered the captors redemption charges, etc., due under act of 1862, i. e. 50c per one thousand feet. The captors refused the tender demanding 50c per log as provided by act of 1866. The owners replevied the logs: *Held,* that the trial judge erred in holding that the redemption charges were controlled by the act of 1866 and that the act of 1862 was repealed thereby.

Argued March 18, 1896. Appeal, No. 14, March T., 1896, by plaintiffs, from judgment of C. P. Perry Co., Nov. T., 1894, No. 3, on a verdict for defendant. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, OLRADY and SMITH, JJ. Reversed.

Replevin to recover fifty-eight flood logs. Before LYON, P. J. Verdict for defendant.

The actual or alleged value of the logs does not appear from the paper-books.

The facts are stated by the Superior Court as follows:

" On May 21, 1894, an extraordinary flood destroyed the boom in the West Branch of the Susquehanna river at Williamsport, Pennsylvania; and as an incident, saw logs representing about one hundred and fifty million feet of lumber, were discharged from the place intended for their storage and carried down the course of the river.

The saw logs had been cut in the woods of the upper river and its tributaries, skidded and marked to indicate their ownership, to the end that they would be driven and floated to the boom, and there sold or manufactured. The marks had been legally registered and as such were well known to the trade, so that the property was easily and certainly identified by the owners, and it was proved on the trial that the title to the logs involved in this issue, was, at the time of the destruction of the boom in the plaintiff; that at the time of capture by the defendants, they knew them to be owned by up river operators; that they were then beyond the control of the owners, as escaped or flood logs, and while floating in the stream, fifty-eight were secured by the defendants in expectation of receiving salvage money at the rate of 50 cents per log from the owners, as compensation for their services.

When the waters subsided, the defendants secured the captured logs on the river bank, lodged a description of the property by its distinctive marks and quality with a justice of the peace, and gave notice in a newspaper under the provisions of an act March 20, 1812, 5 Sm. L. 335, that they claimed as compensation 50 cents per log salvage money under act of December 11, 1866, P. L. (1867) 1365, and owners were notified by the newspaper advertisement to remove the logs within sixty days, "otherwise the said logs will be absolutely forfeited to and become the property of" the defendants.

The plaintiff, by proper representatives, went upon the ground, identified the property, and tendered the captors the sum of 50 cents per thousand feet board measure,—rating seven logs to the thousand feet,—the cost of advertising and justice's fees.'

This tender was refused, and it was then contended, and yet is, that the defendants became invested with an absolute title to the logs so captured.

This action of replevin was instituted to determine the title, and while there are eleven assignments of error, the question in issue is fully disposed of under the fourth and fifth specifications as follows:

Fourth. The court erred in its answer to the plaintiff's sixth point which was as follows, to wit: That the act of 11th of December, 1866, does not repeal the act of 10th of April, 1862, as to logs escaping from the Susquehanna boom against the will of the owners, and the compensation fixed by law to the salvor of such logs is 50c per M. and not 50c per log. Answer of court to this point: "This is refused." [4]

Fifth. The court erred in its answer to the plaintiff's seventh point, which was as follows, to wit: That the 50c per log allowed by the act December 11, 1866, applies only to logs voluntarily put into the Susquehanna river to be floated below Northumberland, and there is no evidence that the logs in dispute were intentionally put into said river to be floated below Northumberland, but, on the contrary, the evidence shows that the logs in dispute were placed in the west branch to be caught in the Susquehanna boom at Williamsport, Penna., to be there manufactured into lumber. Answer of the court to this point: "This point is refused; the act of 13th of April, 1868, expressly

repealed the proviso to the act of December 11, 1866, so that it makes no difference whether the logs were in the stream as the result of accident or whether they were voluntarily placed there." [5]

*Errors assigned,* among others were (4) error in answer to plaintiff's sixth point, reciting point and answer as set out in the statement of facts found by the court; (5) error in answer to plaintiff's seventh point, reciting same, as set out in the statement of facts found by the court.

*H. C. McCormick* and *B. F. Junkin,* with them *Jos. C. Bucher, A. W. Potter* and *Lewis Potter,* for appellant.—The claim of defendants to detain the logs in controversy springs from the capture and compliance with the requirements of the act of 1812; they have no other source of title or right of detention: Hynicka v. Smith, 26 Pa. 499.

On the act of 1866, cited Craig & Blanchard v. Kline, 65 Pa. 399. If the construction placed upon these acts of assembly by the court below be held to be the true one, then every lumberman upon the river, whether his logs are destined to the boom at Williamsport, or intended for his mill at points above, will forfeit his logs in case they were carried away from him against his will by the act of God and found floating upon the waters of the river below the town of Northumberland. Such a construction is not warranted even by the severe letter of the law, and is in direct violation of its spirit and intent.

*Charles Hower* and *Chas. A. Barnett,* for appellees.—Being a later act, does the act of 1866 repeal the compensation fixed by the act of 1862? It does, if in pari materia, and a constitutional exercise of legislative power. That it is both, we think, will appear from the case of Craig v. Kline, 65 Pa. 399, to which we refer as setting forth in extenso the acts of assembly relating to the subject-matter, and establishing the validity of the said act of 1866 : Wendt v. Craig, 67 Pa. 424. The construction of the act of 1866 came before the court in Lumbermen's Exchange v. Fisher, 150 Pa. 475, and it will be noticed that no reference is made in this opinion to the act of April 13, 1868, P. L. 92. See also, Hynicka v. Smith, 26 Pa. 499.

OPINION BY ORLADY, J., July 16, 1896, (after stating the facts as set out in above statement):

Craig v. Kline, 65 Pa. 399, settled beyond controversy that, "it is very clear that the mere fact that a man's property is found floating down the stream is not ipso facto a ground of forfeiture, so as to deprive him of title. It is the intentional or voluntary act of floating, directing or authorizing to be floated, which the law prohibits."

The tender was made to meet the requirements of the act of April 10, 1862, P. L. 383, entitled "An act for the more effectual protection of the owners of logs and lumber on the Susquehanna river."

The second section of the act declares it to be unlawful for any person without authority of the owner to catch, stop, take up or detain any lumber of the kinds mentioned in the first section of the act, which shall be floating in any of the streams or main river above the Susquehanna boom, having thereon any duly registered mark provided for in the first section, and authorizes the owner of the properly marked lumber to take possession of and remove any lumber so detained, without being in any manner liable for damages or expenses incurred in taking up, stopping or detaining the same. "Provided . . . . for the purpose of encouraging persons to catch, take up and secure logs and lumber floating down the Susquehanna river, below the Susquehanna booms, it shall and may be lawful for any person or persons so taking up and securing any of the same kinds of lumber, so found floating down the said river, below said booms, to charge and receive from the owner or owners of said lumber the sum of fifty cents per thousand feet, board measure, and to have a lien upon the same until payment is made or tendered by the owner or his agent."

The learned judge in the court below held that this measure of compensation was repealed by act of December 11, 1866, P. L. (1867), 1365 the title to which is "an act declaratory of the law relating to taking up lumber, and prohibiting the floating of loose logs in the Susquehanna river, between the town of Northumberland and the line of the state of Maryland," and the first section thereof is "That it is hereby declared to be the true intent and meaning of the first section of the act entitled 'An act to regulate the taking up of lumber in the rivers Susque-

hanna and Lehigh and their branches,' approved March 20, 1812, that any saw logs may be taken up, under the provisions of said section whether the same be put in the said stream intentionally or otherwise, and whether the same be floated intentionally or otherwise, the true intent and meaning thereof being *that no saw logs may be floated or driven therein, unless rafted and under the pilotage and control of men and that all saw logs, not so rafted, and under the pilotage and control of men, shall and may be taken up under the provisions thereof :*

"Provided that this section shall only apply to the Susquehanna river between the town of Northumberland and the line of the state of Maryland; and the person or persons taking up any of said saw logs, so floating, shall be entitled to receive from the owners thereof 50 cents for each log, before delivering up the same."

It is evident that this act of the legislature was intended to relieve the doubt that then existed in determining the rights and liabilities of persons engaged in the lumber business; the owners of land along and in the river; and the captors of logs, lumber, etc.

The second section concludes, " and provided further that this act shall not apply to saw logs now lying in the same stream, nor to any case, in which by reason of high water, or from any other casualty said saw logs may be swept out of the West Branch and Susquehanna booms."

The place of capture of the fifty-eight logs in this controversy was below the Susquehanna booms.

The logs captured had been swept out of the Susquehanna boom at Williamsport by the casualty of higher water, and when taken in the river were not under the pilotage and control of men.

By a supplement to the act of December 11, 1866, enacted April 13, 1868, P. L. 92, the proviso that "The act shall not apply to saw logs that may be swept out of the West Branch and Susquehanna booms by reason of higher water or from any other casualty" is expressly repealed.

The constitutionality of the act of 1866 was directly before the Supreme Court in Craig v. Kline, supra, and it was sustained, and again in Lumberman's Ex. v. Fisher, 150 Pa. 475.

This act does not apply to logs or lumber carried off by high

water, and which are not being intentionally or voluntarily floated or driven. It prohibits the floating of loose saw logs whether the same be put in the stream intentionally or otherwise, and whether the same be floated intentionally or otherwise, unless rafted and under the pilotage and control of men.

It does not require an owner to raft under the pilotage and control of men saw logs on an irresistible flood, which would be exacting the performance of an impossible act.

The same force which carried these fifty-eight saw logs from their designed haven, swept in its fury, houses and barns and mills through the streets of the city of Williamsport. The directing cause was beyond all human control, and by the interposition of Providence was an inevitable accident so far as the ordinary use of the river was concerned.

It is an elementary rule that all the parts of a statute are to be considered in its construction, even when the words are plainest; for the true meaning of any passage is that which best harmonizes with the subject, and with every other passage of the statute. The examination is to extend to other acts on the same subject to gather the legislative intent; for all are, for the purpose of construction, considered as forming one homogeneous and consistent body of law and each of them may explain and elucidate every other part of the common system to which it belongs; and when there are irreconcilably conflicting clauses in the same statute, a comparison with other statutes upon the same subject may point out those clauses which are inharmonious with such legislation as designed to prevail: Endlich on Statutes, secs. 35, 43 and notes.

The acts of 1812, 1853, 1855, 1862 and 1866 form a system, and the last one, in use of the words "put into the stream intentionally or otherwise," "floating intentionally or otherwise," "unless rafted and under the pilotage and control of men," refers to a voluntary act or such reckless conduct as would be equivalent thereto.

The legislative mandate is against floating or driving logs between the named points, unless rafted and under the pilotage of men, and it is the logs which are not so rafted and under the pilotage and control of men that shall and may be taken up to entitle the salvor to demand 50 cents for each log.

The act refers to property subordinate to man's control and

management, so as to raft it into form, pilot and direct its course, and not in direct terms or by fair implication to flood logs, which were at the time of capture outside the restraint of human agency or domination.

The construction urged by appellees would practically be a confiscation of the property and destruction of title to it, under a forfeiture justified by conditions which could not be foreseen and against which the owner would be powerless to provide.

Under the evidence, seven logs to a thousand feet was a fair estimate of the board measure thereof, and to require payment of salvage money at the rate of $3.50 per thousand feet board measure would result in abandonment of the property by the owner, as that additional cost would prevent successful operation of the business.    To be effective this manner of securing title and property must be preceded by technical observance of every statutory requirement, as it has ever been held to be the punishment or remedy of extreme cases, and as such to be discouraged.

These acts were to foster and protect an important industry, but this enforcement would work its destruction every season the logs would by an unusual flood be discharged below the Susquehanna booms.

The common sense of man approves the judgment mentioned by Puffendorf, that the Bolognian law which enacted " that whoever drew blood in the streets should be punished with the utmost severity " did not extend to the surgeon who opened the vein of a person who fell down in the street in a fit.    So too of the statute of Edward II., which enacts that a prisoner who breaks prison shall be guilty of a felony, does not extend to a prisoner who breaks out when the prison is on fire, " for he is not to be hanged because he would not stay to be burnt."

All laws should receive a sensible construction, and general terms should be so limited in their application as not to lead to injustice, oppression or an absurd consequence.    It will always be presumed that the legislature intended exceptions to its language, which would avoid results of this character.    The reason of the law should prevail over the letter : U. S. v. Kirby, 7 Wall. 482.

The plaintiff's sixth and seventh points were correct state-

ments of the law, and should have been affirmed.  The fourth
and fifth assignments of error representing them are sustained.

The judgment is reversed, costs to be paid by appellees and
a v. f. d. n. awarded.